1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  RICHARD RAMIREZ,                    No. CIV S-06-2167-LKK-CMK-P

12              Petitioner,

13        vs.                          <u>FINDINGS AND RECOMMENDATIONS</u>

14  RICH SUBIA, et al.,

15              Respondents.

16  _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18  habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's amended

19  petition for a writ of habeas corpus (Doc. 12), respondent's answer (Doc. 24), and petitioner's

20  reply (Doc. 26).

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

1

# I. BACKGROUND

A.   **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

On March 17, 2004, two months after the death of her husband of 23 years, the victim married defendant.  The victim was a recovering alcoholic who had been sober for the entire period of her prior marriage.  She was also bipolar, and took prescription medication to manage the condition.  When defendant and the victim married, the victim was not taking medication for her bipolar condition, and was using alcohol and drugs.

Shortly after their marriage, defendant committed crimes against the victim over a period of approximately one month.  Defendant beat her severely, fracturing her nose and seven ribs.  Defendant handcuffed the victim to the fireplace, burned her with cigarettes, punctured her leg and beat her with a poking tool, and beat her on the knee with a wooden mallet.  He repeatedly penetrated her vagina and anus with foreign objects.  Defendant put a knife to the victim's throat, choked her, and threatened to kill her, her daughter, and her grandson.  At one point, defendant dragged the victim to their car with a belt secured around her neck, and drove her to a nearby church parking lot, preventing the victim from escaping by parking up against a van or trailer.  For several hours, he interrogated her and accused her of being unfaithful, until finally returning her to their residence.  While defendant slept, the victim fled to a neighbor's residence, naked and covered with bruises.  The victim's neighbor called 9-1-1, and the victim was taken to the hospital.

The victim testified at defendant's preliminary hearing, explaining in detail the abuse defendant inflicted upon her.  Thereafter, the victim visited defendant in custody several times, and defendant telephoned her from custody.  By mail, she received a letter in defendant's handwriting, stating, "U did this to yourself . . . .  This is what you are going to tell the D.A. and the judge."

At trial, the victim testified that she had wrongly blamed defendant for her injuries.  She testified she did not know how she had received all of her injuries, but sustained some by falling when she was drunk, others from rough, consensual sex with defendant, and others because she deserved them.  When the prosecutor impeached her with her prior inconsistent statements to police, paramedics, and medical staff, she explained that she had made the statements while she had been delusional from the combined effects of methamphetamine, alcohol, and marijuana,

---

[1]   Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

and from failing to take medication for her bipolar condition. She stated that only after the preliminary hearing had her mind cleared, and she realized she had imagined that defendant caused her injuries.

**B.**   **Procedural History**

Based on these facts, petitioner was charged in a 25-count information as follows: count 1 – torture (§ 206)[2]; count 2 – false imprisonment by violence (§ 236); counts 3, 8, 16, 17, and 21 – assault with a deadly weapon or by force likely to cause great bodily injury ("GBI") (§ 245(a)(1)); count 4 – inflicting corporal injury to spouse (§ 273.5); counts 5, 10, and 15 – criminal threats (§ 422); count 6 – dissuading a witness by force or threat (§ 136.1(c)(1)); counts 7, 11, 12, 13, 14, 18, 19, and 20 – rape by foreign object (§ 289(a)); count 9 – kidnaping (§ 207); count 22 – dissuading a witness from prosecuting a crime (§ 136.1(b)(2)); count 23 – inducing false testimony (§ 137(c)); count 24 – violating a court order (§ 273.6); and count 25 – criminal contempt for disobeying a court order.  The information also alleged GBI as to counts 1, 2, 4, 5, 6, and 9, and a prior domestic violence conviction as to count 4.  Shortly after the presentation of evidence at trial began, count 25 was dismissed and the GBI allegation as to count 1 was stricken.  On February 2, 2005, the jury returned the following verdicts:

| Guilty as charged | Counts 1 through 6, 9 through 16, 18, and 22 through 24 |
|---|---|
| Not guilty | Counts 7, 19, and 20 |
| Guilty on lesser included offense | Counts 8, 17, and 21 |

The jury found that the GBI allegations were true as to counts 2, 3, 6, and 10.  On March 28, 2005, petitioner was sentenced to the determinate term of 59 years and 8 months, plus life with the possibility of parole, plus a concurrent term of 180 days for inducing false testimony.

/ / /

/ / /

---

[2]      All statutory references in this section are to the California Penal Code.

On direct appeal, the California Court of Appeal, in a reasoned decision, modified the 180-day concurrent sentence by staying that sentence, but otherwise affirmed the conviction and sentence.  The California Supreme Court denied direct review.  Petitioner did not file any state post-conviction actions.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

/ / /

/ / /

/ / /

/ / /

1    Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

2 not available for any claim decided on the merits in state court proceedings unless the state

3 court's adjudication of the claim:

4    (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as determined
5    by the Supreme Court of the United States; or

6    (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the State
7    court proceeding.

8 28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

9 Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus,

10 under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to"

11 or represents an "unreasonable application of" clearly established law.  Under both standards,

12 "clearly established law" means only those holdings of the United States Supreme Court as of the

13 time of the relevant state court decision.  See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006).

14 "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts."

15 Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).

16    In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

17 majority of the Court), the United States Supreme Court explained these different standards.  A

18 state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

19 the Supreme Court on the same question of law, or if the state court decides the case differently

20 than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

21 court decision is also "contrary to" established law if it applies a rule which contradicts the

22 governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

23 that Supreme Court precedent requires a contrary outcome because the state court applied the

24 wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

25 Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

26 id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

1   determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

2   1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

3   case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

4   is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

5          State court decisions are reviewed under the far more deferential "unreasonable

6   application of" standard where it identifies the correct legal rule from Supreme Court cases, but

7   unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

8   123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

9   suggested that federal habeas relief may be available under this standard where the state court

10  either unreasonably extends a legal principle to a new context where it should not apply, or

11  unreasonably refuses to extend that principle to a new context where it should apply.  See

12  Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

13  decision is not an "unreasonable application of" controlling law simply because it is an erroneous

14  or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct.

15  1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be

16  found even where the federal habeas court concludes that the state court decision is clearly

17  erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to

18  give proper deference to state courts by conflating error (even clear error) with

19  unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal

20  law, where a state court decision is an "unreasonable application of" controlling law, federal

21  habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn,

22  283 F.3d at 1052 n.6.

23         The "unreasonable application of" standard also applies where the state court

24  denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

25  848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions

26  are considered adjudications on the merits and are, therefore, entitled to deference under the

1  AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

2  The federal habeas court assumes that state court applied the correct law and analyzes whether

3  the state court's summary denial was based on an objectively unreasonable application of that

4  law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

5

6                              **III.  DISCUSSION**

7              Petitioner's amended petition (which is essentially the brief he filed in support of

8  his petition for review by the California Supreme Court) raises the following claims:  (1) the

9  terms in counts 2, 3, 4, 5, 6, 8, 9, 10, 15, 16, 17, and 21 should have been stayed pursuant to

10  California Penal Code § 654; (2) the trial court erred in admitting evidence of prior domestic

11  violence; (3) prosecutorial misconduct; and (4) insufficient evidence to sustain convictions on

12  counts 9 and 22.

13      **A.      Application of California Penal Code § 654**

14              Petitioner argues that, while the trial court stayed the sentence for count 1

15  (torture), it erred by not staying the sentences for counts 2, 3, 4, 5, 6, 7, 8, 10, 15, 16, 17, and 21

16  pursuant to California Penal Code § 654, which precludes multiple punishment for a single act or

17  indivisible course of conduct punishable under more than one criminal statute.  Petitioner adds:

18              . . .Whether a course of criminal conduct is divisible and therefore
               gives rise to more than one act within the meaning of section 654 depends
19             on the intent and objective of the actor.  (citation omitted).
                   The Court of Appeal concluded that the "objective for torture was
20             different from the objective for committing the other crimes . . . even if
               they were to some extent simultaneous."  (citation omitted).
21                 The decision of the Court of Appeal is inconsistent with this
               Court's decision in People v. Britt (2004) 32 Cal.4th 944.  The Britt court
22             held:  "Section 654 turns on the defendant's objective in violating both
               provisions, not the Legislature's purpose in enacting them. . . ."  (citation
23             omitted).  Here, petitioner's objective in committing all of the offenses
               was the same – the infliction of torture upon the victim.
24

25  This is the extent of petitioner's argument in the instant federal petition.  While petitioner

26  references "cruel and unusual punishment" and "disproportionate sentences" in the heading for

                                              7

1    this claim, he does not raise any substantive argument concerning either constitutional concept.

2    His argument is limited to the allegedly erroneous application of § 654 under California law.

3              In their answer, respondents raise two arguments in response to this claim.  First,

4    they argue that the claim is not exhausted for purposes of federal habeas review because no

5    cognizable constitutional component of the claim was ever raised in the state court.  Rather, the

6    only claim made in state court was erroneous application of § 654.  Second, respondents raise the

7    related argument that, in any event, the claim is not cognizable because it does not implicate the

8    denial of any federal constitutional right.  Respondents are correct on both points.

9              1.    Exhaustion

10             Under 28 U.S.C. § 2254(b), the exhaustion of available state remedies is required

11   before the federal court can grant a claim presented in a habeas corpus case.  See Rose v. Lundy,

12   455 U.S. 509 (1982); see also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003); Hunt v.

13   Pliler, 336 F.3d 839 (9th Cir. 2003).   "A petitioner may satisfy the exhaustion requirement in

14   two ways:  (1) by providing the highest state court with an opportunity to rule on the merits of the

15   claim . . .; or (2) by showing that at the time the petitioner filed the habeas petition in federal

16   court no state remedies are available to the petitioner and the petitioner has not deliberately

17   by-passed the state remedies."  Batchelor v. Cupp , 693 F.2d 859, 862 (9th Cir. 1982) (citations

18   omitted).  The exhaustion doctrine is based on a policy of federal and state comity, designed to

19   give state courts the initial opportunity to correct alleged constitutional deprivations.  See Picard

20   v. Connor, 404 U.S. 270, 275 (1971); see also Rose, 455 U.S. at 518.

21             Regardless of whether the claim was raised on direct appeal or in a post-

22   conviction proceeding, the exhaustion doctrine requires that each claim be fairly presented to the

23   state's highest court.  See Castille v. Peoples, 489 U.S. 346 (1989).  Although the exhaustion

24   doctrine requires only the presentation of each federal claim to the highest state court, the claims

25   must be presented in a posture that is acceptable under state procedural rules.  See Sweet v.

26   Cupp, 640 F.2d 233 (9th Cir. 1981).  Thus, an appeal or petition for post-conviction relief that is

1  denied by the state courts on procedural grounds, where other state remedies are still available,

2  does not exhaust the petitioner's state remedies.  See Pitchess v. Davis, 421 U.S. 482, 488

3  (1979); Sweet, 640 F.2d at 237-89.[3]

4          In addition to presenting the claim to the state court in a procedurally acceptable

5  manner, exhaustion requires that the petitioner make the federal basis of the claim explicit to the

6  state court by including reference to a specific federal constitutional guarantee.  See Gray v.

7  Netherland, 518 U.S. 152, 162-63 (1996); see also Shumway v. Payne, 223 F.3d 982, 998 (9th

8  Cir. 2000).  It is not sufficient for the petitioner to argue that the federal nature of the claim is

9  self-evident.  See Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), amended by 247 F.3d

10  904 (9th Cir. 2001).

11          It is clear that this claim is unexhausted because petitioner did not raise any

12  constitutional claims relating to § 654 in the state court.  For this reason alone the claim should

13  be denied.

14          2.    Cognizability

15          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

16  transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

17  1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not

18  available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at

19  1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786

20  F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.

21  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

22  / / /

23  / / /

24  ────────────────

25          [3]    This situation of procedural deficiency is distinguishable from a case presented to
   the state court using proper procedures but where relief on the merits is precluded for some
26  procedural reason, such as untimeliness or failure to raise the claim on direct appeal.  The former
   represents an exhaustion problem; the latter represents a procedural default problem.

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

As with exhaustion, it is also clear that, because no constitutional argument is raised here, this claim is not cognizable.  In particular, the court cannot discern any argument in the instant petition that the state court's application of § 654 violated due process or otherwise rendered the sentence unfair or resulted in a fundamental miscarriage of justice.

**B.**     **Evidentiary Ruling**

The state court provided the following background:

> The trial court admitted evidence of defendant's prior domestic violence to show his propensity to commit such violence.  On appeal, defendant asserts the admission of the propensity evidence violated due process and equal protection.  He also contends the evidence should have been excluded pursuant to Evidence Code sections 1101, subdivision (b), and 352. . . .
> The prior domestic violence evidence concerned two prior incidents.  First, on April 2, 1997, defendant and his former girlfriend, Elizabeth, had an argument.  Elizabeth had scoliosis, epilepsy, and was in a wheelchair because of injuries she sustained in an automobile collision.  Their argument turned into a fight.  Defendant punched her in the face and slammed her head into a window.  At the time, Elizabeth had a restraining order against defendant.
> Defendant pleaded guilty to a violation of section 273.6, violating a domestic violence protective order, and to a violation of section 273.5, inflicting corporal injury to Elizabeth, who was his cohabitant.
> On March 8, 2004, defendant went to the home of a former girlfriend, Catherine, who has poor balance, shortness of breath, and memory problems from a brain injury she suffered in a 1998 car accident.  He entered her garage and shut the door.  Defendant held a knife to her neck and threatened to slit her throat if she did not give him money.

///

1   As to Elizabeth, the state court noted that she was deceased at the time of petitioner's trial and

2   that her 1997 preliminary hearing testimony was read to the jury.  Petitioner's argument, in its

3   entirety, is as follows:

4           Prior to trial, the prosecutor filed in limine motions seeking to
        introduce evidence of petitioner's prior domestic violence, including
5       assaults upon Elizabeth Lopez and Catherine Solorzano, pursuant to
        Evidence Code sections 1101, subdivision (b), and 1109.  (citation to
6       record omitted).  The prosecutor's motion asserted that, "Pursuant to
        Evidence Code sections 1109 and 1101(b) . . . evidence of prior domestic
7       violence should be admitted to establish the Defendant's propensity to
        commit such violence."  (citation to record omitted).
8           Petitioner's trial counsel objected to admission of the evidence of
        both prior assaults under Evidence Code section 1109.  The alleged assault
9       upon Lopez did not result in an arrest or conviction.  She was deceased at
        the time of trial.  Petitioner's trial counsel objected that hearsay evidence
10      of the assault violated petitioner's rights to confrontation and cross-
        examination.  (citation to record omitted).  He also moved to exclude the
11      evidence under Evidence Code section 352, stating, "we have a paraplegic
        who is pulled out of her wheelchair, and having her head slammed through
12      a window." (citation to record omitted).
            The trial court ruled that evidence of petitioner's prior conviction
13      for . . . corporal injury on a spouse, his conviction of violating . . . a
        domestic violence protective order, and evidence of his prior assaults on
14      Lopez and Solorzano, were admissible under Evidence Code section 1109.
        The trial court also overruled petitioner's motion to exclude the evidence
15      pursuant to Evidence Code section 352. (citation to record omitted).
            In People v. Falsetta (1999) 21 Cal.4th 903, this Court upheld the
16      constitutionality of Evidence Code section 1108, against a due process
        challenge.  The Third District [Court of Appeal] has rejected a
17      constitutional challenge to Evidence Code section 1109, a parallel
        provision to Evidence Code section 1108.  (citation omitted).
18          Federal appellate courts have rejected due process challenges to
        new federal rules of evidence authorizing the use of prior sexual assaults
19      as relevant to prove the commission of the charged crime.  (Federal rule
        413(a), 414) (See e.g. United States v. Mound (8th Cir. 1998) 149 F.3d
20      779, 800-801; United States v. Castillo (10th Cir. 1998) 140 F.3d 874,
        882-883).  The United States Supreme Court has not ruled on the issue.
21      Petitioner is required to raise the argument in a petition for review in order
        to challenge the constitutionality of the statute in a federal petition.
22      (citation omitted).
            The Court of Appeal also erred by concluding that petitioner's due
23      process objection to Evidence Code section 1109 was forfeited by failure
        to object on the same grounds in the trial court.  This Court has held that
24      an Evidence Code section 352 objection is sufficient to preserve a due
        process challenge to the admissibility of evidence.  (citation omitted).

25

26   ///

1    Respondents argue that the claim is procedurally barred by the state contemporaneous objection

2    rule default and, in any event, that it should be denied on the merits.

3                    1.    Procedural Default

4                    Respondent argues that the state court imposed the procedural default of failing to

5    raise a contemporaneous objection at the time of trial to admission of the evidence at issue in this

6    claim.  Based on concerns of comity and federalism, federal courts will not review a habeas

7    petitioner's claims if the state court decision denying relief relies on a state law ground that is

8    independent of federal law and adequate to support the judgment.  See Coleman v. Thompson,

9    501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989).  However, a discretionary

10   state rule is not adequate to bar federal habeas corpus review.  See Siripongs v. Calderon, 35 F.3d

11   1308 (9th Cir. 1994).  Generally, the only state law grounds meeting these requirements are state

12   procedural rules.  Even if there is an independent and adequate state ground for the decision, the

13   federal court may still consider the claim if the petitioner can demonstrate:  (1) cause for the

14   default and actual prejudice resulting from the alleged violation of federal law, or (2) a

15   fundamental miscarriage of justice.  See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477

16   U.S. 478, 485, 495 (1986)).

17                   When the state court discusses a procedural default but also reaches the merits of

18   a claim, a denial of the claim cannot be said to have relied on the procedural default.  See

19   Thomas v. Hubbard, 273 F.3d 1164, 1176 (9th Cir. 2001) (citing Harris, 489 U.S. at 263); see

20   also Panther v. Hames, 991 F.2d 576, 580 (9th Cir. 1993).  As the Ninth Circuit observed in

21   Panther, ". . . because the Alaska Court of Appeals considered Panther's claim on the merits . . .

22   so can we."  991 F.2d at 580.  In Thomas, the state court discussed the issue of procedural default

23   but then went on to deny the claim because any error was harmless.  See 273 F.3d at 1176.  The

24   Ninth Circuit held:  "In doing so, the [state] court left the resolution of the procedural default

25   issue uncertain rather than making a clear and express statement that its decision was based on a

26   procedural default."  Id.  Therefore, where the state court discusses both procedural default and

1  the merits, and does not expressly hold that the procedural default is the basis of the denial, the

2  procedural default does not operate to bar federal review.

3  Under California law, ". . . an appellate court will not consider claims of error that

4  could have been – but were not – raised in the trial court." People v. Vera, 15 Cal.4th 269, 275-

5  76 (1997). In Rich v. Calderon, 187 F.3d 1064, 1066 (9th Cir. 1999), and Vansickel v. White,

6  166 F.3d 953 (9th Cir. 1997), the Ninth Circuit held that California's contemporaneous objection

7  rule is an adequate and independent state procedural rule when properly invoked by the state

8  courts. The Ninth Circuit has also concluded that the contemporaneous objection rule has been

9  consistently applied by the California courts. See Melendez v. Pliler, 288 F.3d 1120, 1125 (9th

10  Cir. 2002).

11  Addressing the due process component of petitioner's claims, the state court

12  continued as follows:

13  The Attorney General notes defendant did not make a due process
objection to the admission of the prior domestic violence evidence and

14  argues defendant therefore forfeited review of the constitutional claim.
We agree. . . . [¶] We are bound by Falsetta on the constitutionality of

15  Evidence Code section 1108. Although the case is persuasive because it
relates to a similar statute, it is not binding as to Evidence Code section

16  1109. Furthermore, an objection is necessary to preserve the issue for
review in the Supreme Court, which is what defendant asserts he

17  eventually wants. (citations omitted). Accordingly, we conclude
defendant forfeited review of his current due process argument.

18  In any event, we agree with the courts that, applying the reasoning
of Falsetta, have held that admission of prior domestic violence evidence

19  pursuant to Evidence Code section 1109 does not violate due process.
(citations omitted).

20

21  Based on this analysis, the court cannot say that the state court unambiguously applied the

22  contemporaneous objection rule to deny this claim due to a procedural default. First, it appears

23  that the state court's reference to counsel's failure to raise a due process objection at trial is part

24  of it's merits analysis given the court's statement that objection is required for review by the

25  United States Supreme Court. Second, assuming that the state court did in fact reference a

26  procedural default, the state court also addressed the merits, concluding that "[i]n any event, we

13

1   agree with the courts that . . . have held that admission of prior domestic violence evidence . . .

2   does not violate due process."  For these reasons, the state court did not clearly rely on a

3   procedural default to deny the due process aspect of this claim.

4          While petitioner does not seem to raise an equal protection argument in the instant

5   federal petition, he did raise the argument in the state court.  Therefore, this court will address the

6   equal protection aspect of petitioner's claim.  As to this aspect of the claim, the state court held:

7              Even though he did not challenge the application of Evidence Code
              section 1109 on equal protection grounds in the trial court, defendant
8              contends admission of the evidence violated equal protection.  However,
              he forfeited the contention by not raising it in the trial court (citations
9              omitted).  In any event, application of Evidence Code section 1109 does
              not violate equal protection.  (citation omitted).

10

11  For the reasons discussed above, notably the state court's consideration of the merits

12  notwithstanding failure to raise an objection in the trial court, this court finds that the state court

13  did not clearly impose any procedural default to deny the equal protection aspect of petitioner's

14  evidentiary claim.

15          2.    Merits

16          In the instant petition, petitioner argues that admission of the prior domestic

17  violence evidence violated due process.  He also appears to argue that the use of hearsay

18  evidence violated his constitutional right to confrontation.  He does not, however, raise any equal

19  protection argument.

20          As stated above, a claim based on erroneous application of state law is not

21  cognizable on federal habeas review.  Because federal habeas relief does not lie for state law

22  errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the

23  state proceedings so fundamentally unfair as to violate due process.  See Drayden v. White, 232

24  F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v.

25  Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149,

26  1159 (9th Cir. 1994).  In order to raise such a claim in a federal habeas corpus petition, the

1   "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States,

2   368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v.

3   Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

4          Concerning the due process aspect of this claim, petitioner recognizes that other

5   circuits have rejected the argument that admission of propensity evidence violates due process.

6   However, as respondents note, there is no clearly established law because the United States

7   Supreme Court has not addressed whether admission of propensity evidence violates due process.

8   The Ninth Circuit addressed this situation in Alberni v. McDaniel, and stated:

9          . . . The circumstances of this case are more like those present in
         Earp [v. Ornoski, 431 F.3d 1158 (9th Cir. 2005)], in which we declined to
10         declare a constitutional principle clearly established after the Supreme
         Court had expressly concluded the issue was an "open question." Earp,
11         431 F.3d at 1185. We held in Earp that "the advent of AEDPA forecloses
         the option of reversing a state court determination because it conflicts with
12         circuit law." Id. We cannot conclude that the Nevada Supreme Court
         acted in an objectively unreasonable manner in concluding that the
13         propensity evidence introduced against Mr. Alberni did not violate due
         process, given that Estelle [v. McGuire, 502 U.S. 62 (1991)], expressly left
14         this issue an "open question." [¶] The right Mr. Alberni asserts has not
         been clearly established by the Supreme Court, as required by AEDPA. . . .

15         Alberni, 458 F.3d at 866-67.

16

17   This court is bound by the reasoning in Alberni and must also conclude that habeas relief cannot

18   be granted on the claim that admission of propensity evidence in this case violated due process

19   because the question has not been resolved by the Supreme Court.

20          The court next turns to petitioner's reference to violation of his right to

21   confrontation to the extent the propensity evidence was admitted by way of hearsay. The

22   Confrontation Clause protects a defendant from unreliable hearsay evidence being presented

23   against him during trial. See U.S. Constitution, Amendment VI. Prior to the Supreme Court's

24   decision in Crawford v. Washington, 541 U.S. 36 (2004), the admission of hearsay evidence did

25   not violate the Confrontation Clause where the hearsay fell within a firmly rooted exception to

26   the hearsay rule or otherwise contained "particularized guarantees of trustworthiness." Lilly v.

15

1    <u>Virginia</u>, 527 U.S. 116, 123-24 (1999); <u>Ohio v. Roberts</u>, 448 U.S. 56, 66 (1980).  In <u>Crawford</u>,

2    however, the Supreme Court announced a new rule:  Out-of-court statements by witnesses not

3    appearing at trial that are testimonial are barred under the Confrontation Clause unless the

4    witnesses are unavailable and the defendant had a chance to cross-examine, regardless of whether

5    such statements are deemed reliable by the trial court.  <u>See</u>  541 U.S. at 51.  If error occurred, the

6    next question is whether such error was harmless.  <u>See</u> <u>Bockting v. Bayer</u>, 399 F.3d 1010, 1022

7    (9th Cir. 2005) (applying harmless error analysis).

8            While the Supreme Court in <u>Crawford</u> "le[ft] for another day any effort to spell

9    out a comprehensive definition of 'testimonial,'" the Court provided some guidance. 541 U.S. at

10   68.  The Court observed that "[a]n accuser who makes a formal statement to government officers

11   bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

12   <u>Id.</u> at 51; <u>see</u> <u>also</u> <u>Davis v. Washington</u>, 547 U.S. 813 (2006) (holding that law enforcement

13   interrogations directed at establishing the facts of a past crime or in order to identify the

14   perpetrator are testimonial).

15           In this case, the hearsay petitioner challenges is Elizabeth Lopez' preliminary

16   hearing testimony which was read to the jury.  Clearly, the hearsay was testimonial.  Therefore,

17   under <u>Crawford</u>, admission of the evidence was improper unless the witness was unavailable and

18   there was an opportunity to cross-examine the out-of-court statement.  Both conditions are true in

19   this case – petitioner admits that Lopez was deceased at the time of his trial and, therefore,

20   unavailable, and petitioner had an opportunity to cross-examine Lopez' testimony when it was

21   originally offered at the preliminary hearing.  There was no violation of petitioner's right to

22   confrontation by the use of Lopez' preliminary hearing testimony.

23   ///

24   ///

25   ///

26   ///

C.     **Prosecutorial Misconduct**

Petitioner argues:

> Prior to trial, petitioner's trial counsel moved to redact reference in petitioner's recorded statement to Detective Ramirez that he was recently released from Pelican Bay State Prison. (citation to record omitted). During trial, the trial court ordered redactions of the statement to delete the references to petitioner's incarceration in state prison. (citation to record omitted).
> Deborah Aspling, an emergency room nurse who treated [the victim], testified in the prosecution's case-in-chief. Aspling's testimony included [the victim's] prior inconsistent statements that petitioner held her captive and assaulted her. Aspling also testified that petitioner had recently been released from state prison (citation to record omitted); and that [the victim] was concerned for her safety because petitioner had been imprisoned at Pelican Bay. (citation to record omitted).
> Following Aspling's testimony, petitioner's trial counsel moved for a mistrial on the ground the trial court had previously ordered exclusion of evidence that petitioner had been recently released from state prison. The trial court denied the motion, and admonished the prosecutor to instruct future witnesses not to refer to petitioner's incarceration in state prison. (citation to record omitted).
> The deliberate attempt to put inadmissible and prejudicial evidence before the jury constituted prosecutorial misconduct. (citation omitted). When a prosecutor has been previously admonished by the trial court not to elicit inadmissible evidence, it is "inexcusable" for him or her to do so. (citation omitted).

In addition to references by prosecution witnesses to his prior incarceration, petitioner complains

of statements made by the prosecutor during closing argument:

> A prosecutor commits misconduct by referring to the defendant with derogatory language. (citations omitted). The prosecutor's reference to petitioner as an "animal" in closing argument constituted intentional misconduct.

As to references to petitioner's prior incarceration at Pelican Bay, the state court

held:

> . . . [O]utside the presence of the jury, defense counsel moved for a mistrial. But the trial court denied the motion. It reasoned that, because Aspling had not indicated in her notes that the victim said anything about the specific prison in which defendant served time, the reference in her testimony to Pelican Bay was unintentional on the part of the prosecutor. The court also concluded that any prejudice was mitigated by the fact that the jury already knew about defendant's prior domestic violence and

17

1        incarceration. . . .  [¶] As the trial court noted, this was not a case in which
the prosecutor intentionally elicited inadmissible evidence.  Other
2        evidence properly apprised the jury that defendant previously committed
domestic violence and served time.  The information concerning where
3        defendant served, to which an objection was sustained, did not appreciably
add to the poor light cast upon defendant by the other evidence.  Indeed,
4        defendant, in his brief, makes no attempt to explain why or how the jury
would have relied on the opaque reference to "Pelican Prison."  The brief
5        and partial reference did not infect the trial with unfairness or render the
trial fundamentally unfair.  (citation omitted).

As to the prosecutor's closing argument, the state court held:

        In a case in which the prosecutor also used the term "animal" to
refer to the defendant, the California Supreme Court stated the use of the
term was "arguably improper."  The court continued:  "While we do not
condone the use of opprobrious terms in argument [citation], the
prosecutor's single reference to defendant as an 'animal' during a closing
argument otherwise free of intemperate language cannot reasonably be
considered prejudicial misconduct."  (citation omitted).  The same is true
here:  the use of the term "animal" cannot reasonably be considered
prejudicial misconduct.  Furthermore, . . . the court sustained [defense
counsel's] objection and said, in front of the jury, that it is not appropriate
to refer to defendant "like that."

Success on a claim of prosecutorial misconduct requires a showing that the

conduct so infected the trial with unfairness as to make the resulting conviction a denial of due

process.  See Greer v. Miller, 483 U.S. 756, 765 (1987).  The conduct must be examined to

determine "whether, considered in the context of the entire trial, that conduct appears likely to

have affected the jury's discharge of its duty to judge the evidence fairly."  United States v.

Simtob, 901 F.2d 799, 806 (9th Cir. 1990).   Even if an error of constitutional magnitude is

determined, such error is considered harmless if the court, after reviewing the entire trial record,

concludes that the alleged error did not have a "substantial and injurious effect or influence in

determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  Error is

deemed harmless unless it "is of such a character that its natural effect is to prejudice a litigant's

substantial rights."  Kotteakos v. United States, 328 U.S. 750, 760-761 (1946).  Depending on

the case, a prompt and effective admonishment of counsel or curative instruction from the trial

judge may effectively "neutralize the damage" from the prosecutor's error.  United States v.

1 Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1993) (citing Simtob, 901 F.2d at 806).

2          Respondents argue that neither of the state court's conclusions is contrary to or an

3 unreasonable application of these standards.  The court agrees.  In particular, neither instance of

4 alleged misconduct, when considered in the context of the entire trial and all the evidence, can be

5 said to have affected the jury's obligation to be fair or resulted in a substantial and injurious

6 effect on the jury's verdict.  Regarding the reference to Pelican Bay, the court agrees with the

7 state court that, because the jury already knew that petitioner had been incarcerated on a prior

8 occasion, nothing was made worse by knowing that such incarceration was at Pelican Bay.  And,

9 while the prosecutor's use of the word "animal" in closing argument may have been in poor taste,

10 any possibility for undue prejudice was eliminated by the trial court's comment, in front of the

11 jury, that use of the term was inappropriate.

12          **D.      Sufficiency of the Evidence**

13          Petitioner argues the evidence was insufficient to support convictions on counts 9

14 (kidnaping) and 22 (dissuading a witness).  When a challenge is brought alleging insufficient

15 evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence

16 adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact

17 could have found proof of guilt beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S.

18 307, 319 (1979).[4]  Under Jackson, the court must review the entire record when the sufficiency of

19 the evidence is challenged on habeas.  See id.  It is the province of the jury to "resolve conflicts

20 in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

21 ultimate facts."  Id.  "The question is not whether we are personally convinced beyond a

22

23          [4]      Even though Jackson was decided before AEDPA's effective date, this expression
of the law is valid under AEDPA's standard of federal habeas corpus review.  A state court
24 decision denying relief in the face of a record establishing that no rational jury could have found
proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable
25 application of the law as outlined in Jackson.  Cf. Bruce v. Terhune, 376 F.3d 950, 959 (denying
habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a
26 rational jury could make the finding at issue).

1  reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors

2  reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991);  see also Herrera v. Collins, 506

3  U.S. 390, 401-02 (1993).  The federal habeas court determines sufficiency of the evidence in the

4  context of the substantive elements of the criminal offense, as defined by state law.  See Jackson,

5  443 U.S. at 324 n.16.

6          1.    Kidnaping

7          Petitioner argues that the evidence was insufficient to establish the asportation

8  element required for kidnaping.  He states:

> The prosecutor impeached [the victim's] trial testimony, denying
> the allegations she had previously made, with her prior inconsistent
> testimony at the preliminary hearing.  In her preliminary hearing
> testimony, [the victim] testified that during her ordeal, she was "held
> captive in the car in the church parking lot behind [her] house for hours
> and hours."  (citation to record omitted).  She could not get out of the
> vehicle, because petitioner had parked it up against another vehicle,
> preventing her from opening the passenger side door.  He kept her there
> for several hours, accusing her of sleeping with their houseguests. (citation
> to record omitted).
>     The above evidence was insufficient as a matter of law to satisfy
> the asportation element of simple kidnaping.  The distance was not
> "substantial in character," and the "scope and nature" of the movement
> failed to substantially increase the risk of harm, prevent detection, or
> increase the opportunity for the commission of other crimes. (citation
> omitted).  On the contrary, the movement from a private to a public place
> increased the possibility of detection, and decreased the risk of harm, since
> assaulting [the victim] in a public place could draw attention to petitioner
> if she cried out.  In fact, petitioner did not assault [the victim] in the car,
> but merely questioned her about her sexual activities. . . .

20  The state court began its analysis of this claim by observing that, under California law, the

21  movement required for simple kidnaping must be substantial in nature, meaning that more than

22  slight or trivial.  See People v. Martinez, 20 Cal.4th 225 (1999).  The jury may convict without

23  finding an increase in harm, or any other contextual factors.  See id.  The court then held:

> Here, the jury was properly instructed, consistent with Martinez.
> The movement of the victim was substantial in nature.  Defendant put a
> belt around the victim's neck and took her to the car.  She was taken from
> her home, where two others were staying, and isolated her in a church
> parking lot for several hours in the dark of night, hostilely accusing her of

infidelity.  Defendant parked up against a van or trailer so she could not open the door and escape.  When she tried to yell for help, he choked her or covered her mouth.  Defendant's conduct significantly increased the risk of harm to the victim by taking her from the presence of others and isolating her.  The movement from the home to the church parking lot was neither slight nor trivial.  Defendant asserts that taking the victim to a public place decreased the risk of harm and increased the possibility of detection.  This argument ignores the reality that it took place in the night and that there were others at the residence.  The evidence was sufficient to sustain the conviction.

This court finds that the state court's analysis is unassailable.  The evidence described by the state court is clearly sufficient to allow any rational trier of fact to conclude that petitioner was guilty of simple kidnaping.  As the state court noted, petitioner's argument that the movement was not sufficient because he took the victim from a private to a public place does not account for three key facts:  (1) it was dark in the parking lot; and (2) the parking lot was isolated; and (3) there were others at the residence.  In addition, the movement involved in this case was significant in that petitioner positioned the victim in such a way that she could not escape and he prevented her from yelling out.  The state court's conclusion was neither contrary to nor an unreasonable application of clearly established law.

2.  Dissuading a Witness

Petitioner argues:

In People v. Fernandez (2003) 106 Cal.App.4th 943, the court held that [the] petitioner's efforts to dissuade a witness from giving truthful testimony at a preliminary hearing did not establish a violation of section 136.1, subdivision (b)(1).  The court agreed with [the] petitioner that the term "report" as used in [that section] did not include testimony given at a preliminary hearing.

Petitioner contends that, at worst, his conduct constituted a misdemeanor under California Penal Code § 137(c).  The state court began by noting that petitioner "does not deny [he] attempted to get the victim to change her story and testify falsely. . . ."  The court also noted that, under California Penal Code § 136.1, every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from causing a complaint, information, probation or parole violation to be sought and prosecuted, and assisting in the

1   prosecution thereof, is guilty of a crime.  The court continued its analysis as follows:

2          Reviewing the statutes proscribing bribing, influencing,
3   intimidating, and threatening witnesses and, specifically, cases concerning
    statutory provisions other than section 136.1, subdivision(b)(2), defendant
4   claims that provision, the violation of which he was convicted, does not
    apply to attempting to have a witness falsify testimony.  He is able to
5   arrive at this conclusion only by misstating the import of the subdivision.
    He says the subdivision applies only to attempting "to prevent a crime
6   victim or witness either from reporting the occurrence of a crime or from
    seeking his arrest/prosecution for this crime."  This incorrect summary of
7   the statute writes out of the statute conduct that dissuades a witness from
    "assisting in the prosecution" of the defendant.  (citation omitted).  The
8   victim's conduct, induced by defendant, was an attempt to impede the
    prosecution.  Defendant's obvious intent was either to discourage the
    prosecution from prosecuting him or damage that prosecution.
9          Because changing her story and lying on the stand certainly did not
    constitute "assisting in the prosecution," defendant's conduct in
10  influencing the victim to so act falls within the proscription of section
    136.1, subdivision (b)(2).  The evidence was therefore sufficient to sustain
11  the conviction.

12         Again, this court cannot find any fault with the state court's reasoning.  Under the

13  correct description of California law, it is obvious that the undisputed evidence was sufficient for

14  any rational jury to conclude that defendant's conduct violated that law.  Therefore, the state

15  court's determination was neither contrary to nor an unreasonable application of clearly

16  established Supreme Court precedent.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

**IV.  CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1.      Petitioner's amended petition for a writ of habeas corpus (Doc. 12) be denied; and

2.      The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED: April 4, 2008


_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE